## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| **Titilayo Shiyanbade,**<br><br>**Tyesha Brooks, and**<br><br>**Magan Lanham,**<br><br>                     **Plaintiffs,**<br><br>**v.**<br><br>**Executive Health Group, PC,**<br><br>**and**<br><br>**Dr. J. Rand Baggesen**<br><br>                     **Defendants.** | **CIVIL ACTION NO.** <u>3:19-cv-726</u> |

## COMPLAINT

Plaintiffs Titilayo Shiyanbade ("Shiyanbade"), Tyesha Brooks ("Brooks"), and Magan Lanham ("Lanham"), (collectively "Plaintiffs"), respectfully move for judgment against Defendants Executive Health Group, PC ("EHG") and Dr. J. Rand Baggesen ("Baggesen") (collectively "Defendants"):

### Introduction

1.      This Complaint challenges EHG and Baggesen's violations of federal and state laws that prohibit employers from engaging in unfair pay practices and from discriminating against employees on the basis of race.

2.      Count I alleges a claim for unpaid overtime in violation of the Fair Labor

Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*., ("FLSA").  Plaintiffs, who were employed by EHG, hereby bring this action seeking unpaid overtime, liquidated damages, and attorneys' fees and costs arising out of Defendants' FLSA violation. Plaintiffs regularly work or worked more than forty (40) hours per workweek for Defendants without receiving overtime compensation as required under the FLSA. EHG willfully violated the FLSA.

3.      Count II alleges a claim on behalf of Plaintiffs Shiyanbade and Brooks for race discrimination in violation of 42 U.S.C. § 1981.

4.      Count III alleges a supplemental claim on behalf of Plaintiffs Shiyanbade and Brooks for race discrimination brought under state law pursuant to the Virginia Human Rights Act ("VHRA"), Code of Virginia § 2.2-3900, *et seq*.

## Jurisdiction and Venue

5.      This Court has jurisdiction for the claims arising under federal law (Counts I and II) under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), because Plaintiffs' claims arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the state law claim (Count III).

6.      Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to this lawsuit have taken place in the Eastern District of Virginia.

7.      Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

8.      Shiyanbade is a resident of Virginia who was employed by Defendants most recently as a Phlebotomist, or laboratory technician. She was an "employee" of Defendants as defined in the FLSA. Shiyanbade is Black.

9. Brooks is a resident of Virginia who was employed by Defendants most recently as a Medical Assistant. She was an "employee" of Defendants as defined in the FLSA. Brooks is Black.

10. Lanham is a resident of Virginia who was employed by Defendants most recently with the title of Clinical Manager. She was an "employee" of Defendants as defined in the FLSA. Lanham is White.

11. EHG is a medical practice located in Richmond, Virginia. According to EHG's website, Dr. Baggesen is the Medical Director of EHG, a "concierge" medical services office catering to business executives. According to filings with the Virginia State Corporation Commission, EHG lists its principal office as being located at 7101 Jahnke Road, Richmond, Virginia 23225, with its registered agent similarly located in Richmond, Virginia. EHG is an "employer" as defined by the FLSA.

12. Dr. Baggesen is a family physician and owner of EHG, a medical practice located in Richmond, Virginia. At all times relevant, Dr. Baggesen had ultimate control and authority over corporate operations as well as the terms and conditions of Plaintiffs' employment, and their terminations, at EHG. Dr. Baggesen is an "employer" as defined by the FLSA. Dr. Baggesen is White.

## Factual Allegations

### FLSA

13. Shiyanbade was hired by Defendants in June 2017 at a pay rate at or about $25 per hour.

14. Brooks was hired by Defendants in May 2018 at a pay rate at or about $16 per hour.

15. Lanham was hired by Defendants in October 2017. Her ending pay rate was $24.50

per hour.

16.     Plaintiffs worked at EHG's office located in Richmond, Virginia.

17.     During the time frame relevant to this lawsuit, Plaintiffs had various job titles, but each primarily performed duties and assignments akin to those of a Medical Assistant.

18.     Plaintiffs were assigned medical assistant duties, including to interact with patients, obtain new client paperwork and create client charts, create electronic medical records ("EMRs"), take vital signs, prepare ultrasound and electrocardiogram ("EKG") equipment, take urine and blood samples, perform hearing and vision tests, put together information packets for clients, and collect payment for services rendered.

19.     Shiyanbade's phlebotomist duties included obtaining samples of biological material and processing them for shipping to testing facilities.

20.     Lanham's duties also included preparing exam rooms each morning, turning on electronics and medical equipment each day, ordering supplies, and other clerical functions supporting the office. Lanham also received calls and text messages from Dr. Baggesen before and after her work shifts, and was expected to perform work during her personal time for EHG's benefit, including making calls to patients or vendors of EHG from her personal cell phone.

21.     Plaintiffs each worked more than 40 hours each week, as follows:

        a.      Shiyanbande's typical working hours were between 7:30 and 7:45am until 4:30 to 4:45pm each day, although sometimes she arrived at work and began working earlier than 7:30am, or continued working later than 4:45pm;

        b.      Brooks's typical working hours were between 7:40am and 4:30 to 5:00pm each day;

        c.      Lanham's typical working hours were between 7:00 and 7:15am until 4:30

to 5:00pm each day, plus Lanham was requested to and performed work while at home using her personal phone to make calls on EHG's behalf.

22.     Plaintiffs were expected to perform their duties during lunch, referred to as a "working lunch," every day. If they left the office, it was to get their lunch from the cafeteria in the building and return immediately to eat while working.

23.     Plaintiffs did not receive an uninterrupted meal break of at least 30 minutes.

24.     As a result, Plaintiffs each worked more than 40 hours per week for which EHG did not pay any overtime premium as required by the FLSA.

25.     On or about June 5, 2019, Lanham was in a car accident and suffered injuries that prevented her from working. During the time that Lanham was injured, Shiyanbade and Brooks assumed Lanham's responsibility of arriving at 7:00am to begin work.

26.     Plaintiffs did not perform managerial tasks over other employees, such as: interviewing, selecting, or training employees; setting employees' schedules or hours of work; directing employees' work; maintaining production or sales records; appraising employee productivity and efficiency; handling employee complaints and grievances; or disciplining employees.

27.     Plaintiffs did not perform work directly related to the management or general business operations of their employer such as: advising the management, planning, negotiating, purchasing, promoting sales, or business research and control.

28.     Plaintiffs did not perform work requiring advance knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

29.     Plaintiffs:

     a.     did not have the authority to formulate, affect, interpret, or implement

management policies or operating practices;

      b.    did not perform work that affected business operations to a substantial degree;

      c.    did not have authority to commit Defendants in matters that have significant financial impact;

      d.    did not have authority to waive or deviate from established policies and procedures;

      e.    did not have authority to negotiate and bind Defendants on significant matters; and

      f.    were not involved in planning long- or short-term business objectives.

30.    Based on the nature of Plaintiffs' job duties, there is no FLSA exemption that applies to preclude these employees from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

31.    Defendants' payment arrangement with each Plaintiff was described by EHG as compensation on an hourly basis.

32.    Defendants did not pay Plaintiffs anything for the hours each worked over 40 per week.

33.    There is no exemption to the FLSA's requirement to pay overtime premium that is applicable to Plaintiffs.

34.    Defendants did not require Plaintiffs to keep precise track of their hours worked.

35.    Defendants do not have accurate timekeeping records of the exact hours worked by Plaintiffs or other employees.

36.    Defendants knew or should have known that Plaintiffs were working overtime

hours without being paid.

37.    Defendants received benefit of the work performed by Plaintiffs in excess of 40 hours per week.

38.    Upon information and belief, EHG is in possession of records (such as log-in records and emails) which should reflect that Plaintiffs were performing work for EHG in excess of 40 hours per week.

39.    Defendants willfully violated the FLSA by failing to keep accurate records or hours worked and failing to pay Plaintiffs any overtime premium required by the FLSA.

40.    At all relevant times, Defendants intended to deprive Plaintiffs of the overtime pay they were entitled to under the FLSA or acted with reckless disregard for Plaintiffs' rights under the FLSA.

## **Discrimination**

41.    During the course of their employment, Dr. Baggesen and his wife, Nicole Baggesen, treated Shiyanbade and Brooks differently from similarly situated white employees. By making racially charged comments and perpetuating the negative attitudes of some patients regarding the presence of Black support staff in the office, Dr. Baggesen and Nicole created an uncomfortable and racially charged work environment for their Black employees.

42.    Nicole Baggesen was the Membership Coordinator at EHG, responsible for recruiting and handling new membership enrollment. Although she was not a doctor or member of the medical staff, by virtue of her status as the new wife of Dr. Baggesen, she wielded significant supervisory authority over the employees of EHG.

43.    At some point in 2019, Dr. Baggesen and Nicole told Lanham that they had taken a patient out to dinner who, in referring to Shiyanbade and Brooks, had asked the Baggesens

disapprovingly why there were so many "niggers" working for EHG. Dr. Baggesen or Nicole repeated this racial slur in relaying this encounter to Lanham, and did so in a manner indicating she and Dr. Baggesen thought it humorous that the patient asked this question and/or thought it was humorous to relay the comment. Neither Dr. Baggesen nor Nicole expressed any sentiment disapproving of or disagreeing with the patient's comment. Then, without any laughter or amusement in his tone of voice, Dr. Baggesen stated that he wished that Lanham had been in the office on the day of that patient's visit to assist with the patient instead of Shiyanbade or Brooks.

44.     Lanham let Dr. Baggesen and/or Nicole know that she did not appreciate or condone the racist language they used.

45.     Lanham was so uncomfortable with the Baggesen's attitude regarding the patient's comment that she told Shiyanbade and Brooks about this incident.

46.     On another occasion, Dr. Baggesen screamed at his entire staff because Brooks disclosed to a pharmaceutical representative that he was absent from the office due to a court appearance. After the screaming incident, Dr. Baggesen personally apologized to at least one white staff member, but did not personally apologize to Shiyanbade or Brooks.

47.     Both Dr. Baggesen and Nicole regularly made comments to Shiyanbade and Brooks over the course of their employment that isolated or singled them out as, and fed into racial stereotypes about, Black women.

48.     Such comments include:

a.     In approximately early 2019, Dr. Baggesen joked that because he liked catfish, he was part of the Black community in front of Shiyanbade, Brooks, and Lanham. Lanham told him to stop making such comments because they made Shiyanbade and Brooks uncomfortable, and made her uncomfortable because she was friends with Shiyanbade and

Brooks. Dr. Baggesen refused this reasonable request, insisting that he was only joking.

b.      In approximately late 2018 or early 2019, Dr. Baggesen repeatedly asked Shiyanbade to reach out to at least one Black patient to try and retain the patient's business because she was also Black.

c.      On or about May 2019, Nicole, upon returning from a vacation in Jamaica, told Brooks that she should "visit Jamaica" because she "saw a lot of people who reminded me of you," or a substantially similar statement.

d.      Throughout her employment, Dr. Baggesen frequently made comments regarding Brooks's natural hairstyle, particularly when she wore her hair in an afro. He asked to touch her hair, pointed it out to customers, and asked her how she managed it.

e.      When Shiyanbade was on the phone at work, Dr. Baggessen on more than one occasion stated that "Titi is always on the phone with one of her million kids," or words to that effect.

49.     The ongoing racial comments were severe enough that in spring of 2019, Shiyanbade also had a conversation with Dr. Baggesen in which she told him his comments made her uncomfortable and asked him to stop. She specifically raised the instance in which he repeated a patient's comment referring to her and Brooks as "niggers." He denied making any comments and insisted to her that he was not a racist. After this conversation, Dr. Baggesen's demeanor toward Shiyanbade became erratic, vacillating between exceedingly nice and standoffish and removed.

50.     Plaintiffs each were terminated on or about June 25, 2019.

51.     At Shiyanbade's termination, Dr. Baggesen told her that he was going to have to let her go and that she didn't "fit into the culture" of the office. Shiyanbade asked for a reason, and Dr. Baggesen said that he didn't have to give her a reason.

52.     When Dr. Baggesen fired Brooks on that same day, he told her he did not have a to provide a reason, but that he was letting her go because of "culture changes." When Brooks asked what he meant by "culture changes," he said he did not have to tell her.

53.     All Plaintiffs were replaced with White employees performing the same job duties.

54.     Based on the  Baggesens' series of racially-charged comments in the months preceding their terminations, Dr. Baggesen's failure to elaborate on what "culture change" he sought by their terminations, and their immediate replacement with White staff, Shiyanbade and Brooks understood that the sought after "culture change" was a move from Black employees to White employees in support staff roles.

55.     Lanham was terminated on or about June 26, 2019. Although she is a White comparator who was also terminated, Lanham had expressed to Dr. Baggesen and Nicole her disapproval and displeasure regarding the Baggesens' use or recitation of racist language and apparent endorsement of their patient's sentiment that too many Black employees worked at EHG. The Baggesens were also aware that Lanham had informed Shiyanbade and Brooks of the Baggesens' repetition of the patient's racially charged comments directed at them.

56.     Plaintiffs Shiyanbade and Brooks were not informed that they were failing to meet the expectations of their positions.

57.     Prior to their termination, Plaintiffs Shiyanbade and Brooks went above and beyond EHG's performance expectations as they each came in early to cover and perform Lanham's work while she was out on leave because of her injury.

58.     At all times prior to their termination, Plaintiffs Shiyanbade's and Brooks's individual job performance each met or exceeded the reasonable expectations of EHG.

59.     Defendants' intentionally violated Shiyanbade's and Brooks's federally- and state-

10

protected rights to be free from race-based discrimination in the workplace with malice or with reckless indifference.

## Count I – FLSA Overtime (All Plaintiffs)

60.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.     At all times relevant herein, Plaintiffs were each an "employee" of EHG as that term is defined by 29 U.S.C. §203(e)(1).

62.     At all times relevant herein, Defendants were Plaintiffs' "employer" as that term is defined by 29 U.S.C. §203(d).

63.     At all relevant times herein, Plaintiffs were not exempt from the overtime pay requirements of the FLSA, and were entitled to receive overtime pay under the FLSA for all time worked beyond forty (40) hours in a workweek

64.     Defendants failed to pay Plaintiffs their overtime rate of pay for the time each worked beyond forty (40) hours in a workweek.

65.     At all times relevant herein, Defendants were aware of the overtime requirements of the FLSA.

66.     At all times relevant herein, Defendants knew or should have known that Plaintiffs did not qualify for an exemption to the overtime pay requirements of the FLSA.

67.     Defendants' failure to pay overtime compensation to Plaintiffs was willful and not in good faith.

## FLSA Relief Requested

Wherefore, Plaintiffs request the following Relief against Defendants:

A.     Money damages for all unpaid overtime compensation;

     B.     Liquidated damages in an amount equal to all unpaid overtime owed to Plaintiffs;

     C.     Pre-judgment and post-judgment interest;

     D.     Reasonable attorneys' fees and costs expended in the prosecution of this case;

     E.     Any and all further relief permissible by law.

### Count II – 42 U.S.C. § 1981 (Plaintiffs Shiyanbade and Brooks)

68.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

69.     Plaintiffs Shiyanbade and Brooks had a contractual employment relationship with Defendants.

70.     Defendants unlawfully discriminated against Shiyanbade and Brooks because of their race/color (Black) in terminating them from their employment with EHG.

71.     Plaintiffs Shiyanbade and Brooks suffered pecuniary and non-pecuniary damages as a result of Defendants' discrimination including humiliation, mental anguish, pain, suffering, embarrassment, inconvenience, loss of wages, compensation, and related benefits.

### § 1981 Relief Requested

Wherefore, Plaintiffs request the following Relief against Defendants:

     A.     Compensatory damages;

     B.     Punitive damages;

     C.     Back Pay for lost wages, compensation, and benefits;

     D.     Reinstatement or front pay in lieu of reinstatement;

     E.     Pre-judgment and post-judgment interest;

F.      Reasonable attorneys' fees and costs expended in the prosecution of this

case;

G.      Any and all further relief permissible by law.

**Count III – Virginia Human Rights Act (Plaintiffs Shiyanbade and Brooks)**

72.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if

fully set forth herein.

73.     The VHRA states, "Conduct that violates any Virginia or federal statute or

regulation governing discrimination on the basis of race, color, religion, national origin, sex,

pregnancy, childbirth or related medical conditions, age, marital status, or disability shall be an

'unlawful discriminatory practice' for the purposes of this chapter." Code of Virginia §2.2-3901.

74.     The VHRA further states that "No employer employing more than five but less than

15 persons shall discharge any such employee on the basis of race, color, religion, national origin,

sex, pregnancy, childbirth or related medical condition" and provides a cause of action for

employees who have been terminated in violation of this statute. Code of Virginia §2.2-3903(B-

C).

75.     Throughout the duration of Shiyanbade's and Brooks's employment with

Defendants, EHG employed more than five but less than 15 persons.

76.     Defendants' conduct alleged herein was an unlawful discriminatory practice on the

basis of race or color in violation of the VHRA and federal law.

77.     As a result of the unlawful discrimination, Plaintiffs Shiyanbade and Brooks

suffered lost wages and compensation, plus interest running from the date of their termination.

78.     Plaintiffs Shiyanbade and Brooks are also entitled to an award of attorneys' fees in

an amount authorized by the VHRA.

## VHRA Relief Requested

Wherefore, Plaintiffs request the following Relief against Defendants:

A.      Back Pay;

B.      Pre-judgment and post-judgment interest running from the date of termination;

C.      Attorneys' fees and costs expended in the prosecution of this case; and

D.      Any and all further relief permissible by law.

Plaintiffs respectfully demand **TRIAL BY JURY**.

Respectfully submitted,
**Titilayo Shiyanbade**
**Tyesha Brooks**
**Magan Lanham**
Plaintiffs


By:_____/s/_____
Craig Juraj Curwood (VSB No. 43975)
Attorney for Plaintiffs
Curwood Law Firm
530 E. Main Street, Suite 710
Richmond, VA 23219
Telephone: (804) 788-0808
Fax: (804) 767-6777
Email: ccurwood@curwoodlaw.com
        *Counsel for all Plaintiffs*

and

Nicole Gloria Tortoriello (VSB No. 91129)
Vishal Agraharkar (VSB #93265)
Eden B. Heilman (VSB #93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080

Fax: (804) 649-2733
Email: ntortoriello@acluva.org
        *Counsel for Plaintiffs Shiyanbade and*
*Brooks*